**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYRONE WITHERSPOON, JR. | : |
| 1347 Kerper St. | : |
| Philadelphia, PA 19111 | :   CIVIL ACTION |
| | : |
| Plaintiff, | : |
| v. | :   CASE NO.: |
| | : |
| GOLD COAST INGREDIENTS, INC. | : |
| 2429 Yates Ave. | : |
| Commerce, CA 90040 | :   **JURY TRIAL DEMANDED** |
| | : |
| Defendant. | : |
| | : |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Tyrone Witherspoon (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Gold Coast Ingredients, Inc. (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff contends that he was subjected to discriminatory and retaliatory treatment while employed with Defendant (as explained *infra*) and that he was unlawfully terminated from his employment.

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

**JURISDICTION AND VENUE**

2.       This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3.       This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.       Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because the actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

5.       Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult male residing at the above-captioned address.

8.      Gold Coast Ingredients, Inc. is a manufacturer and wholesaler of food flavoring and food coloring, with production plants located in several states throughout the United States (including Pennsylvania), and headquarters at the above-captioned address.  Plaintiff worked from one such production plant, located at 1127 Interchange Rd., Gilbert, PA 18331.

9.      At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.      Plaintiff is a Black (African American) male.

12.      Plaintiff was hired on or about August 10, 2025, by staffing agency Express Employment Professionals ("EEP") and placed to work within Defendant's production plant located at 1127 Interchange Rd., Gilbert, PA 18331.

13.      Although Plaintiff was hired through EEP, he was treated in all functional aspects of his job as an employee of Defendant, including but not limited to being supervised on a day-to-day basis by Defendant's managers.  As a result, Defendant should be considered Plaintiff's single, joint and/or integrated employer.

14.     Plaintiff worked for Defendant as a production worker in Defendant's Spray and Dry Department, tasked with drying liquid products and turning them into powder.

15.     Plaintiff directly reported to Defendant's Site Manager, Richard Bontempo (hereinafter "Bontempo" - Caucasian); the Assistant Site Manager, Mark Parsons (hereinafter "Parsons" - Caucasian); the Floor Supervisor, April Murphy (hereinafter "Murphy" – Caucasian); and the Safety Lead/Assistant Site Manager, Josh Vasquez (hereinafter "Vasquez" – Caucasian/Hispanic).

16.     Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well until he was unlawfully terminated (discussed further *infra*), on or about November 7, 2025, because of his race and/or for objecting to race discrimination.

17.     Upon information and belief, all non-supervisory/non-management employees in Defendant's Spray and Dry Department were Black, and throughout Plaintiff's employment with Defendant, Defendant's upper management members were predominantly (if not all) non-Black.

18.     Throughout Plaintiff's employment with Defendant, Defendant's non-Black management subjected Plaintiff and other Black employees to hostility, animosity, racial slurs, and disparate treatment as a result of their race. By way of example, but not intended to be an exhaustive list:

  a. One of Plaintiff's coworkers, Terrell Terry ("Terry" – Black), warned Plaintiff about Vasquez, stating that he should "watch out" for Vasquez because he routinely mistreated Black employees, including throwing at least one Black employee's lunch in the garbage for no legitimate reason;

  b. Parsons regularly subjected Plaintiff and other Black employees in his department to particularly heinous racial slurs, including but not limited to referring to Plaintiff

and other Black employees as "monkeys," or "you monkeys," and stating things like "what are you monkeys doing?";

c. In or about the last week of October of 2025, Parsons struck Plaintiff across the face while he was walking to the production floor, hitting him in the lip so hard that his lip bled. While Parsons originally feigned remorse, as Plaintiff walked away towards the restroom to wash his face, Parsons told him to "get the fuck back to work" and laughed. Upon information and belief, Parsons never treated Caucasian and/or non-Black employees with this degree of animosity and hostility; and

d. Plaintiff and other Black employees were denied promotional opportunities unlike their non-Black co-workers.

19. In addition to the foregoing instances of disparate and discriminatory treatment, Defendant's management treated Black employees far less favorably than non-Black or Caucasian employees with regard to permanent employment opportunities.

20. For example, Plaintiff was initially advised by Defendant's management that he would be hired as a permanent employee and given a $1.50 per hour raise when he accrued a minimum of 540 hours of work for Defendant.

21. However, Plaintiff was never hired on as a permanent employee by Defendant nor was he given a $1.50 per hour raise, despite the fact that he had accrued 660 hours with Defendant at the time of his termination.

22. Leading up to his termination, Plaintiff had objected to Parson's discriminatory and disparate treatment towards him and other Black employees, but his concerns were ignored.

23. Specifically, in or about the end of October or early November of 2025, Plaintiff verbally informed Parsons during a meeting that:

5

a. Plaintiff and other Black employees were tired of being treated unfairly and did not want to be referred to as "monkeys";

b. Parsons's racially abusive language was offensive, inappropriate, and discriminatory;

c. Other Black employees in the Spray and Dry Department were equally as outraged and offended by the discrimination and hostility they were being subjected to by Parsons but were fearful of losing their jobs; and

d. Plaintiff believed Parsons deliberately hit Plaintiff in the face.

24. In response to Plaintiff's aforesaid objections to/complaints of race discrimination and disparate treatment by Parsons, Parsons immediately became defensive and asked if Plaintiff was accusing him of being racist, stating that the aforementioned racial slurs were just "jokes."

25. Parsons then ignorantly stated that he would not mind if somebody called him a "cracker," clearly dismissing Plaintiff's objections and failing to understand the impact of his racially discriminatory behavior toward Plaintiff and other Black employees.

26. Upon information and belief, Defendant's management failed to properly address and/or investigate Plaintiff's aforesaid complaints of race discrimination but instead continued to subject Plaintiff and other Black employees to hostility, animosity, and disparate treatment.

27. For example, Vasquez on more than one occasion pretextually admonished Plaintiff and other Black employees for manufactured and/or petty reasons.

28. Particularly, Parsons had informed the Spray and Dry Department employees, including Plaintiff, that they were permitted to sit down while routinely waiting for liquid products to dry during the course of their duties when they had nothing else to do.

29.   However, despite Parsons' permission to sit during the aforesaid waiting period, Vasquez forbade Plaintiff and his Black coworkers from sitting during this time while he was supervising.

30.   Additionally, on or about November 7, 2025, Vasquez berated Plaintiff for briefly removing his hair net while on his break and leaving the production floor during said break to find his keys.

31.   Vasquez followed Plaintiff and continued to berate him for taking off his hair net, despite that Plaintiff was not arguing with him, and demanded to know why Plaintiff allegedly felt the need to break the rules.

32.   Plaintiff was genuinely confused by Vasquez's hostility, as Plaintiff at all times acted in compliance with Defendant's rules and regulations, and he explained to Vasquez that he was not wearing a hairnet because he was on his break.

33.   Vasquez became enraged and screamed at Plaintiff that he was terminated, despite the fact that he was not Plaintiff's direct supervisor, and further yelled, "pack your stuff and you're out of here."

34.   Vasquez also declared that he could not wait until his own boss (Parsons) was terminated as Parsons kept "hiring *these people* with criminal records" – a clear reference to the stereotype that Black men are criminals and should not be given opportunities for rehabilitation or to work because of the same.

35.   Following his termination, Parsons informed Plaintiff via text that he would purportedly talk to Bontempo about allowing Plaintiff to keep his job (upon information and belief, a transparent and belated attempt to dissuade Plaintiff from pursuing future claims of race

discrimination against Defendant), but Parsons then unsurprisingly advised Plaintiff that his termination would stand.

36.     There is no doubt that Plaintiff's race was a motivating and determinative factor in the termination of his employment with Defendant as he had objected to/complained of race discrimination to Defendant's management on multiple occasions, with the most recent being **just one week prior to his termination**.

37.     Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, not offered direct employment by Defendant, and ultimately terminated because of his race and his objections to/complaints of race discrimination.

**COUNT I**
**Violations of Title VII**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Hire)**

38.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39.     During Plaintiff's employment with Defendant, he was subjected to discrimination, retaliation, offensive slurs, and a hostile work environment through disparate treatment and pretextual admonishment as outlined *supra* because of his race.

40.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but his concerns were ignored.

41.     Plaintiff was then terminated for completely pretextual reasons on or about November 7, 2025.

42.    Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, not hired as a permanent employee, and ultimately terminated because of his race and/or his objections to/complaints of race discrimination.

43.    Plaintiff also believes and therefore avers that his race was a motivating and/or determinative factor in Defendant's failure to hire him as a permanent employee and ultimate decision to terminate his employment.

44.    These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

**COUNT II**
**Violations of Title VII of 42 U.S.C. Section 1981**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4) Failure to Hire)**

45.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.    During Plaintiff's employment with Defendant, he was subjected to discrimination, retaliation, offensive slurs, and a hostile work environment through disparate treatment and pretextual admonishment as outlined *supra* because of his race.

47.    Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but his concerns were ignored.

48.    Plaintiff was then terminated for completely pretextual reasons on or about November 7, 2025.

49.    Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation, not hired as a permanent employee, and ultimately terminated because of his race and/or his objections to/complaints of race discrimination.

9

50.    Plaintiff also believes and therefore avers that but for his race, he would have been hired as a direct employee by Defendant and/or not terminated.

51.    These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C.    Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering, and humiliation);

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.    Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 15, 2026

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Tyrone Witherspoon, Jr. | : | CIVIL ACTION |
| v. | : | |
| Gold Coast Ingredients, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.             (x )

| | | |
|---|---|---|
| 7/15/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Defendants place of business_

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit? Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WITHERSPOON, JR., TYRONE

## DEFENDANTS

GOLD COAST INGREDIENTS, INC.

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** ☐ 710 Fair Labor Standards Act | |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 862 Black Lung (923) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 863 DIWC/DIWW (405(g)) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 864 SSID Title XVI | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 865 RSI (405(g)) | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 555 Prison Condition | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |
| | | **IMMIGRATION** ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE  7/15/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____